UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Case No. 8:10-bk-16416-MGW
                                                Chapter 7
Jeffery David Vogt
and Jeanette Melanie Vogt,

      Debtors.
_____/

Cabuya Cherokee, SA, *et al.*,                  Adv. No. 8:11-ap-00689

      Plaintiffs,

v.

Jeffery David Vogt; Jeanette Melanie
Vogt; Ched Edward Vogt; and Susan K.
Woodard, Chapter 7 Trustee,

      Defendants.
_____/

## MEMORANDUM OPINION AND ORDER DENYING
## <u>MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT</u>

      This Court previously ruled that a settlement agreement entered into by the Debtor

(Jeffery Vogt), his brother, and American Transworld Corporation ("ATWC") in an earlier

chapter 11 case is unenforceable as to the Debtor.[1] Under that settlement agreement, Jeffery Vogt

was obligated to pay ATWC $14 million within 90 days. If the Debtor failed to make that

payment, then ATWC would be entitled to the Debtor's interest in various Costa Rican

companies. The settlement agreement, however, was never incorporated into a modified plan or

approved under Rule 9019 (or in the confirmation order). So the Court ruled in this proceeding

that the agreement was unenforceable as a matter of law. ATWC now asks the Court to

---

[1] Jeffery Vogt's wife, Jeanette, is also a debtor in this case. Jeanette, however, was not involved in the underlying transactions that led to this adversary proceeding. So all references to "Debtor" will be to Jeffery.

reconsider that ruling because (i) it says the Trustee does not have standing to argue the settlement agreement is void for lack of notice; and (ii) the Court failed to specify whether the agreement was void or voidable.

While ATWC is correct that the Trustee does not have standing to assert claims on behalf of creditors that do not affect the estate, the Trustee's claims in this case—which seek to rescind the settlement agreement—do affect the estate. If the settlement agreement is unenforceable, then the parties revert to the confirmation order, which leaves the Debtor with approximately a 60-70% interest in the Costa Rican companies after a default. That is not the case under the settlement agreement. And here the settlement agreement is "unenforceable"—not void or voidable—because it was never incorporated into a modified plan or approved under Rule 9019 (or in the confirmation order). Accordingly, the Court declines to reconsider its previous ruling that the settlement agreement is unenforceable as a matter of law.

## Background

Sometime before 2006, Jeff Vogt and his brother Ched acquired investment property (or options to purchase investment property) in Costa Rica through a variety of Costa Rican companies.[2] The Vogts intended on developing that property into a high-end marine, residential, and resort project. But the Vogts needed investors to help finance the project. They also needed an attorney to help communicate with prospective investors and memorialize any agreements with those investors in writing. So the Vogts turned to Jerry Sarbo to help them obtain financing for the project.

---

[2] Those Costa Rican companies, which are plaintiffs in this adversary proceeding, include: El Area Final SA, Terreno Jota Zeta SA, Circuito Inicial Cuatro SA, Vo y Zeta Terrenos SA, Inmobiliaria Ceros y Unos SA, Cabuya Delaware, Cabuya Florida, Cabuya Cherokee, Cabuya Suwanee, Cabuya Spruce, Vesper Bell Limitada, Playa Cocos de Montezuma SA, Vista Cabuya JG, Frente Verde SA, and others.

Sarbo, an old family friend, had operated a real estate development company in Tampa. The Vogts say they respected Sarbo's investment advice. And when they contacted him about the project, Sarbo expressed some interest in partnering with them. Over the next few weeks, the parties had various discussions about a potential joint venture. The discussions between the parties eventually culminated in an agreement that would provide short-term financing to the Vogts in exchange for allowing Sarbo an opportunity to invest in the project.

<u>The Debtor and ATWC enter into a loan agreement</u>

Under the loan agreement, which was entered into in 2006, Sarbo agreed to raise approximately $6.9 million for the project. That funding apparently was sufficient to allow the Vogts to exercise certain options to purchase additional property. In exchange for that funding, the Vogts agreed to give Sarbo 120 days to conduct due diligence to see if he wanted to invest in the project. If he did, then the companies would issue each of the parties shares of stock equal to their capital contribution. If Sarbo elected not to invest in the project, then the Vogts would be obligated to repay Sarbo the $6.9 million he invested in the project, with repayment of that loan secured by shares of stock in the Costa Rican companies.

<u>The Debtor files for chapter 11 bankruptcy</u>

What happened after the loan agreement was executed is the subject of substantial controversy. But it is not necessary for the Court to resolve that dispute in order to rule on ATWC's motion for reconsideration. All that is necessary here is to say that: Sarbo notified the Vogts that he did not intend on investing in the project and demanded repayment of the $6.9 million; the Vogts, for a variety of reasons, were unable to repay the loan; and the Vogts'

inability to repay the loan and possible loss of the Debtor's interest in the Costa Rican companies forced him to file for chapter 11 bankruptcy.[3]

After he filed for bankruptcy, Vogt filed an adversary proceeding seeking to determine the extent, validity, and priority of ATWC's liens on the Costa Rican companies or the property owned by those companies.[4] ATWC, in turn, filed a $15.1 million proof of claim.[5] That claim consisted of $9.9 million in principal on the loan, $3.1 million in interest, and $2.1 million in "advances." ATWC said its claim was secured by a 66% interest in the Costa Rican companies.

<u>The Debtor proposes a plan that provides for ATWC's claim</u>

In July 2009, the Debtor proposed a plan of reorganization that provided for ATWC's claim.[6] In his original plan, the Debtor proposed to pay ATWC's claim in full by refinancing the debt using the Costa Rican companies as collateral.[7] The Debtor anticipated that the refinancing would net him approximately $20 million. Under the plan, the Debtor was required to pay ATWC in full by the later of December 31, 2009, or 90 days following the conclusion of the adversary proceeding that the Debtor filed.[8] If the Debtor failed to pay ATWC in full, then he would be obligated to make monthly payments to ATWC based on a three-year amortization while he continued to seek refinancing.[9]

---

[3] *In re Jeffery Vogt*, Case No. 8:09-bk-03513-MGW. All references to "Doc. No." in this opinion will refer to docket entries in the prior chapter 11 cases. References to "Adv. Doc. No." will refer to docket entries in this adversary proceeding.

[4] *Jeffery David Vogt v. American Transworld Corporation, et al.*, Adv. No. 8:09-ap-00637-MGW.

[5] Claim No. 15-1.

[6] Doc. No. 142.

[7] *Id.* at ¶ 5.2.

[8] *Id.*

[9] *Id.* at ¶ 5.2.2.

Two months later, the Debtor proposed an amended plan.[10] Under the amended plan, the Debtor remained obligated to pay ATWC's claim in full by refinancing the debt using the Costa Rican companies as collateral.[11] The Debtor was also required to pay ATWC within the same time period.[12] The only difference in the proposed treatment was the remedy in the event of default. Instead of agreeing to make monthly payments based on a three-year amortization until he could secure refinancing, the Debtor proposed to surrender approximately 30-40% equity in the Costa Rican companies to ATWC in the event he defaulted under the proposed plan.[13]

The following month, the Debtor filed his second amended plan.[14] The proposed treatment of ATWC's claim was the same under the amended plan and the second amended plan. The Debtor solicited acceptance of his second amended plan, and all of the creditors voting on the plan voted to accept it.[15] ATWC, however, objected to the proposed plan.[16] An initial confirmation hearing on the Debtor's second amended plan and ATWC's objection was scheduled for December 2, 2009.

<u>The parties negotiate a settlement of their dispute under the loan agreement</u>

At the December 2 confirmation hearing, the parties mentioned the possibility of a settlement for the first time.[17] The Court directed the parties to memorialize the settlement in an

---

[10] Doc. No. 188.

[11] *Id.* at ¶ 5.2.

[12] *Id.*

[13] *Id.*

[14] Doc. No. 218.

[15] Doc. No. 222-1.

[16] Doc. Nos. 157 & 158.

[17] Doc. No. 265 at 6-11.

agreed modified plan or an agreed confirmation order.[18] But the parties did neither. Instead, they came back for a second confirmation hearing on December 17, 2009. At the December 17 confirmation hearing, the parties advised the Court that they were still working on a draft settlement agreement.[19] There apparently were still a few issues that needed to be ironed out. Since the parties understood that the agreement would ultimately come back to the Court for approval, they inquired whether the Court would be willing to assist them to finalize the agreement if necessary.[20]

Ultimately, the parties did not need the Court's assistance. It turns out the parties entered into a written settlement agreement two days after the December 17 confirmation hearing.[21] Under the written settlement agreement, the Debtor had 90 days to pay ATWC $14 million ($13.5 million if it could secure a certain release).[22] If he paid the required settlement amount, then ATWC would give up any ownership interest in the Costa Rican companies.[23] If the Debtor failed to pay the settlement amount within the required 90 days, then the Debtor would relinquish his interest in the Costa Rican companies.[24]

<u>The parties submit an agreed confirmation order</u>

Although the parties entered into a written settlement agreement, the terms of that settlement agreement were never incorporated into a modified plan, as the Court suggested. Nor,

---

[18] *Id.* at 11.

[19] Doc. No. 359 at 3-4.

[20] *Id.* at 4-6.

[21] Adv. Doc. No. 17.

[22] *Id.* at ¶ 2.

[23] *Id.*

[24] *Id.*

for that matter, was the settlement agreement ever filed in the adversary proceeding the Debtor

initiated against ATWC, which was dismissed with prejudice as part of the settlement agreement.

And all the confirmation order says about the settlement agreement is that all causes of action

and plan disputes between the parties were settled:

> That all causes of action and objections to claim or objections to
> plan or disclosure statement between the Debtor and American
> Transworld Corporation, a creditor, have been settled pursuant to
> terms of the Settlement Agreement in the adversary proceeding
> number 8:09-ap-637, and that this Court retains jurisdiction to
> enforce the terms of the Settlement Agreement.[25]

Significantly, the confirmation order does not incorporate any of the terms of the

settlement agreement.[26] Moreover, while the confirmation order identifies four modifications to

the plan, the settlement agreement is not one of them.[27] Perhaps more importantly, the

confirmation order does not actually approve the parties' settlement agreement.[28]

<u>The Debtor defaults under the settlement agreement</u>

In any event, the Debtor was required to pay the settlement amount (whether $13.5 or

$14 million) by March 22, 2010, under the terms of the parties' written settlement agreement.

The Debtor, however, claimed Sarbo and ATWC interfered with his ability to raise the

settlement amount. Sarbo and ATWC, not surprisingly, deny that allegation. Suffice it to say, the

settlement payment was never made, and ATWC ultimately obtained an order from this Court

declaring the Debtor in default of the settlement agreement and requiring the Debtor to surrender

---

[25] Doc. No. 305 at ¶ 8.

[26] *Id.*

[27] *Id.* at ¶ 6.

[28] Doc. No. 305.

his interest in the Costa Rican companies to ATWC. After the Debtor defaulted under the settlement agreement, his chapter 11 case was dismissed.

<u>The Debtor files for chapter 7 bankruptcy</u>

Two months later, the Debtor and his wife filed for chapter 7 bankruptcy. Almost immediately, ATWC and the Costa Rican companies initiated this adversary proceeding seeking a declaration that the confirmation order and the order dismissing the Debtor's adversary proceeding in the previous chapter 11 case were final, nonappealable orders.[29] ATWC alleged in its complaint that it was concerned that the Debtor may try to undo the 2009 settlement agreement. The Trustee responded to ATWC's adversary complaint by filing a counterclaim seeking a declaration that the 2009 settlement agreement was either void or voidable.[30]

The parties each moved for summary judgment on ATWC's claim for declaratory relief.[31] The Debtor argued the settlement agreement was void as a matter of law for two reasons. First, the Debtor said the settlement agreement was, in reality, a sale that was outside the ordinary course of business, and as a consequence, it required notice and a hearing. And the Debtor said that never happened.[32] Second, the Debtor argued that the settlement agreement rendered the plan impossible since the Debtor required the stock in the Costa Rican companies to refinance ATWC's claim, but the ownership interest in that stock was to be put into escrow under the settlement agreement.[33] ATWC, in response, claimed it was entitled to judgment as a matter of law because creditors were given proper notice of the settlement agreement, and even if they

---

[29] Adv. Doc. No. 1.

[30] Adv. Doc. No. 29.

[31] Adv. Doc. Nos. 76, 90 & 91.

[32] Adv. Doc. No. 76 at 8-10.

[33] *Id.* at 10-11.

were not, the Trustee did not have standing to raise lack of notice on their behalf.[34] According to

ATWC, the Court should give effect to the final, non-appealable confirmation order.

<u>The Court rules the settlement agreement is unenforceable</u>

The parties' summary judgment motions required the Court to balance two

fundamental—yet, in this case, competing—bankruptcy principles: On the one hand, due process

requires that creditors receive proper notice of a proposed compromise. On the other hand,

confirmation orders are entitled to finality. The Court ultimately concluded that due process won

because there was nothing in the plan or confirmation order that gave creditors notice of the

terms of the parties' compromise. Accordingly, the Court ruled that the settlement agreement

was unenforceable as a matter of law.

ATWC now asks the Court to reconsider its summary judgment ruling.[35] In its motion,

ATWC raises a number of issues. But its argument on reconsideration really boils down to three

main points. One, ATWC says the Trustee does not have standing to raise a claim that—if it

exists at all—properly belongs to the creditors in the previous case.[36] Two, ATWC says the

Court never specified in its ruling whether the settlement agreement was void or voidable.[37]

Three, the Debtor is collaterally estopped—by virtue of this Court's orders in the prior case—

from rescinding the agreement.[38] In reality, the arguments raised in ATWC's motion for

reconsideration were previously raised in their summary judgment motion.[39]

---

[34] Adv. Doc. No. 90 at 6-7.

[35] Adv. Doc. No. 111.

[36] *Id.* at 3-4.

[37] *Id.* at 2-3.

[38] *Id.* at 4-5.

[39] Adv. Doc. No. 90.

And a motion for reconsideration ordinarily is not a vehicle for disappointed parties to relitigate previously decided issues.[40] Nor can a motion for reconsideration be used to make additional arguments not previously raised by counsel or raise new theories.[41] Nevertheless, the Court believes the parties may benefit from a more detailed explanation of its ruling, so the Court will consider the issues raised on reconsideration.

## Conclusions of Law

### The Trustee has standing to bring these claims

The Court disagrees with ATWC that the Trustee does not have standing to rescind the settlement agreement. ATWC cites three cases in support of its proposition the Trustee does not have standing: *Advantage Healthplan, Inc. v. Potter*, *In re J.H. Investment Services, Inc.*, and *O'Halloran v. First Union National Bank of Florida*.[42] According to ATWC, those cases stand for the proposition that a due process violation is creditor-specific and that the Trustee lacks standing to assert claims that belong only to creditors.[43] The Court agrees with the Trustee that ATWC misreads the cases it is relying on.

For instance, ATWC cites *J.H. Investment* for the proposition that a trustee does not have standing to assert claims that belong solely to a creditor.[44] But, a closer reading of that case reveals that the court was limiting a trustee's standing to assert claims on behalf of creditors only

---

[40] *Belmont Wine Exchange v. Nascarella (In re Nascarella)*, 492 B.R. 327, 335 (Bankr. M.D. Fla. 2013) (quoting *In re Waczewski*, 2005 WL 1330691, at *1 (Bankr. M.D. Fla. 2005)).

[41] *Id.*

[42] Adv. Doc. No. 111 at 3-4 (citing *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521 (D.D.C. 2008); *In re J.H. Inv. Servs., Inc.*, 413 Fed. Appx. 142 (11th Cir. 2011); *O'Halloran v. First Union Nat'l Bank of Florida*, 350 F.3d 1197 (11th Cir. 2003)).

[43] *Id.*

[44] *Id.* at 3 (citing *In re J.H. Inv. Servs., Inc.*, 413 Fed. Appx. 142 (11th Cir. 2011)).

where the outcome of those claims would have no conceivable effect on the bankruptcy estate.[45]

And, in that case, the claims asserted by the trustee would have had no effect on the bankruptcy

estate.[46] Here, the claims asserted by the Trustee could potentially affect the bankruptcy estate. If

the settlement agreement is unenforceable, that would result in the estate retaining approximately

a 60% interest in the Costa Rican companies, and those companies may be worth as much as $40

million. Because the outcome of the claims asserted by the Trustee could have an effect on the

estate, this case is distinguishable from *J.H. Investment*.

     As for *O'Halloran*, the Court likewise agrees with the Trustee that the case does not

stand for the proposition that the Trustee *only* has standing to bring claims that could have been

brought by the Debtor had he not filed for bankruptcy. That case stands for the unremarkable

proposition that a Trustee has standing to bring *any* claims the Debtor could have brought had he

not filed for bankruptcy.[47] ATWC's inclusion of the word "only" creates a limitation that does

not exist. In fact, in a footnote, the *O'Halloran* court observed that "[i]t is an open question in

this Circuit whether a bankruptcy trustee may under some circumstances assert creditors' claims

in addition to claims of the estate."[48] The Eleventh Circuit recognized that it previously held in

*E.F. Hutton Co. v. Hadley* that a trustee could not bring such claims; but it also noted that its

---

[45] *In re J.H. Inv. Servs., Inc.*, 413 Fed. Appx. at 148 (holding that "the trustee generally lacks standing to bring claims that belong solely to the estate's creditors, *the outcome of which would not affect the bankruptcy estate or the rights of all other creditors*") (emphasis added).

[46] *Id.* (explaining that "[a]lthough both Zuppardo and BC Properties raised claims in the bankruptcy court related to Unit 19, the ultimate disposition of Unit 19—whether it ended up in the hands of Zuppardo or BC Properties—*could not have affected the estate or the claims of any other creditor*") (emphasis added).

[47] *O'Halloran v. First Union Nat'l Bank of Florida*, 350 F.3d at 1202 (explaining that a "bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy").

[48] *Id.* at n.3.

holding was limited to the facts of that case. So *O'Halloran* does not limit the Trustee's standing.[49]

That leaves *Advantage Healthplan*. That case involved the appeal of a bankruptcy court order approving a settlement agreement between the plan committee established by the debtor's chapter 11 plan and the law firm that represented the committee.[50] Advantage Healthplan—a member of the plan committee—argued on appeal that it, as well as the entire creditor body represented by the committee, was deprived of its due process rights because it was not given proper notice of the settlement.[51] The District Court for the District of Columbia ruled that Advantage Healthplan had standing to assert its own due process rights but that it did not have standing to assert the rights of others members of the committee.[52]

*Advantage Healthplan* is distinguishable from this case in one critical respect. There, it was one creditor asserting the due process rights of other creditors. Absent certain limited circumstances, one creditor ordinarily does not have the right to assert claims on behalf of the other creditors.[53] Here, it is the Trustee—not another creditor—asserting the claim. That difference is significant because the Trustee—unlike another creditor—is statutorily charged with marshaling the assets of the Debtor's estate for the benefit of the Debtor's creditors.[54]

---

[49] *Id.* (citing *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985-87 (11th Cir. 1990)).

[50] *Advantage Healthplan*, 391 B.R. at 527.

[51] *Id.* at 547-48.

[52] *Id.* at 548-49.

[53] *Id.* at 548 (explaining that in the "ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim for relief on the legal rights or interests of third parties") (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

[54] 11 U.S.C. § 704(a)(1).

Because the person asserting the claim in this case has an obligation to bring claims that benefit other creditors, *Advantage Healthplan* is distinguishable.

In the end, ATWC does not cite any authority for the proposition that a trustee is barred from bringing a claim that would benefit the estate simply because the trustee may be vindicating rights of particular creditors in the process. By denying the Trustee standing here, the Court would be preventing her from fulfilling her statutory duty to collect and reduce property of the estate to money.[55] Accordingly, the Court concludes the Trustee has standing, and while the Court believed it implicitly addressed the standing issue in its previous ruling, it is important to outline its reasoning here.

<u>The settlement agreement is unenforceable</u>

The Court now turns to ATWC's primary substantive argument—i.e., the Court did not indicate whether it was ruling that the settlement agreement was void or voidable.[56] ATWC correctly points out that the Trustee argued the settlement agreement is void as a matter of law. ATWC, by contrast, says the settlement agreement, at worst, is voidable.[57] According to ATWC, the Trustee does not cite any authority for the proposition that lack of notice renders the settlement agreement void. And if the agreement is, in fact, only voidable, then ATWC says the Court failed to take into account Bankruptcy Code sections 349 and 549.[58] The Court, however, need not decide whether the agreement is void or voidable. The Court is only concerned with the enforceability of the agreement.

---

[55] *Id.*

[56] Adv. Doc. No. 111 at 2-3.

[57] Adv. Doc. No. 90 at 4.

[58] Adv. Doc. No. 111 at 2-3.

It is generally recognized that a settlement agreement is unenforceable unless it is approved by the Court.[59] Neither party really disputed that proposition, at least not initially. In fact, ATWC (as well as the Trustee) implicitly—if not explicitly—recognized the need for Court approval throughout the entire settlement process. One reason the parties initially asked the Court to help iron out any differences with some of the fine points of the agreement the parties were putting together was because they recognized the Court ultimately had to approve any agreement. The need for Court approval is also the reason the Court directed the parties—and the reason the parties understood the need—to put the terms of the settlement agreement in a modified plan or agreed confirmation order. But it appears ATWC now disputes that court approval is required for a settlement.

It is true that some courts reject—or at least question—the proposition that court approval is required for settlement agreements. Perhaps the most prominent decisions calling into the question the need for court approval are *In re Novak*[60] and *In re Telesphere Communications, Inc.*[61] In those decisions, the courts noted that bankruptcy courts were closely involved in the day-to-day administration of cases under the former Bankruptcy Act and that the Bankruptcy Code was amended in 1978 to, among other things, remove bankruptcy courts from that role.[62] In

---

[59] *See, e.g., In re Pugh*, 167 B.R. 251, 253 (Bankr. M.D. Fla. 1994) (holding that the compromise "could not have become a binding contract unless the Trustee complied with [Rule 9019] which in subclause (a) requires a Court approval of any compromise by the estate submitted by a Motion filed by the Trustee and after a hearing on notice to creditors"); *In re Leslie Fay Cos.*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) (holding that "[c]ompromises may not be made in bankruptcy absent notice and a hearing and a court order"); *In re Rothwell*, 159 B.R. 374, 379 (Bankr. D. Mass. 1993) (holding that a "settlement agreement is unenforceable without notice of the settlement to creditors or a court order approving it"); *but see In re Novak*, 383 B.R. 660, 666 (Bankr. W.D. Mich. 2008) (observing that "[s]ome courts have declared without explanation that all settlements involving the bankruptcy estate must be approved").

[60] 383 B.R. at 666.

[61] 179 B.R. 544, 551 (Bankr. N.D. Ill. 1994).

light of that legislative history, and the permissive language of Rule 9019, those courts concluded that court approval is not required for settlements.

This case, however, does not involve a Rule 9019 settlement. Of course, as the Court previously pointed out, Rule 9019 does not occupy the entire field of court approval of bankruptcy compromises; it is, instead, a catch-all provision. There are other ways to approve a compromise. In the case of confirmation, parties can obtain approval of a settlement affecting the treatment of a creditor by including the agreement in a modified plan filed with the Court.[63] And that is what distinguishes this case from *Novak* and *Telesphere Communications*. Neither of those cases involved compromises of a creditor's plan treatment. ATWC does not offer any authority for the proposition that the Debtor can compromise ATWC's plan treatment without seeking court approval.

So the real question is whether the parties' compromise agreement was ever actually approved. In a way, both parties are essentially taking the position that the agreement was approved, with the only disagreement being whether the notice requirements were met and, if not, whether the agreement is void (or voidable) as a consequence. But that overlooks the point the Court made at the January 16, 2013, hearing when it was announcing its ruling: The fact is the Court never actually approved the settlement agreement.

For starters, a modified plan containing the settlement was never filed. And a careful review of the confirmation order in the previous case reflects that the Court never actually approved the settlement agreement. There is nothing in the confirmation order that says the compromise—the terms of which were never even incorporated into the confirmation order— was approved. Nor could the confirmation order have approved the parties' settlement

---

[62] *In re Novak*, 383 B.R. at 666-67; *In re Telesphere Comm'ns*, 179 B.R. at 551.
[63] 11 U.S.C. § 1127(b).

agreement. The parties do not dispute—nor could they—that notice is a prerequisite to approval of their settlement.

The standard for notice was articulated by the Supreme Court in *Mullane v. Central Hanover Bank & Trust*.[64] There, the Court said that a "mere gesture" is not sufficient when due process requires a person be given notice.[65] Due process, as the Court in *Mullane* recognized, requires the party giving notice to employ means that are reasonably certain to inform those affected:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.[66]

Yet, as the Court explained in ruling on the parties' summary judgment motions, none of the creditors in this case were given notice of the proposed settlement.[67] The terms of the parties' settlement were never set forth in a modified plan. While the terms of the settlement agreement were discussed in very general terms during the December 2 and 17 confirmation hearing, they were never identified with any specificity because the parties were still working on the settlement agreement.[68] And the specific terms of the settlement were never incorporated into—

---

[64] 339 U.S. 306, 314-15 (1950).

[65] *Id.* at 315.

[66] *Id.* at 314-15.

[67] Adv. Doc. No. 107 at 13-15.

[68] Doc. Nos. 265 & 359.

much less approved by—the confirmation order even though the parties did have a signed settlement agreement by that point.[69] In fact, the terms of the parties' settlement are not contained anywhere in the record in the previous chapter 11 case. Accordingly, even if the confirmation order did approve the parties' settlement, the creditors were denied due process since they were not given notice of the compromise and an opportunity to object to it.

That leads to one final point. ATWC argues, in essence, that the lack of notice to creditors is essentially "no harm, no foul" since the Debtor could not pay the $20 million due under the plan within 90 days if he could not pay $14 million—$6 million less—within the same time period:

> [W]hat is the importance of the Settlement Agreement? The Debtor ended up in the same place under either the Settlement Agreement or under the plan that treated ATWC UNIMPAIRED— divested of any interest in the CR Companies and owing ATWC millions of dollars. There is nothing that the Trustee in the Debtor's second bankruptcy case can do to change that result.[70]

And ATWC says the Debtor's creditors all voted for the plan.

ATWC's argument, however, is fundamentally flawed. There is one crucial distinction between the plan and settlement agreement. In the event of a default under the settlement agreement, the Debtor is divested of any interest in the Costa Rican companies in the event of a default. But the same is not true under the plan. Under the plan, the Debtor is only divested of an interest equal to the amount owed to ATWC—estimated to be approximately 40%—in the event of default. So the Debtor would be left with a 60% interest in the Costa Rican companies, and those companies could be worth as much as $40 million.[71] The Court never actually approved the

---

[69] Doc. No. 305.

[70] Adv. Doc. No. 111 at 5.

[71] Doc. No. 218 at ¶ 5.2.

Debtor giving up that interest, nor were the Debtor's creditors ever put on notice that he was doing so. So while they may have voted for the plan, the creditors would have had no idea they were voting in favor of the parties' undisclosed settlement. Accordingly, the settlement agreement is unenforceable.

ATWC says by ruling the agreement is unenforceable—rather than void or voidable—the Court is overlooking its argument under Bankruptcy Code §§ 349 and 549. But those sections have no applicability here regardless of whether the agreement is void or voidable. For instance, ATWC says that if the agreement is void, then it would have been reinstated under § 349 upon dismissal of the first case. Section 349 does provides that any transfer voided under certain enumerated sections is reinstated if a debtor's case is dismissed (other than under Bankruptcy Code § 742).[72] But this Court's ruling—even if it "voided" the agreement—would not fall within those enumerated sections. Moreover, ATWC says § 549 is the exclusive means for avoiding an authorized post-petition transfer. That may be true. The Trustee, however, is seeking to rescind a pre-petition—not post-petition—transfer. As a consequence, neither § 349 nor § 549 precludes the Trustee from seeking to rescind the parties' settlement agreement.

<u>The Trustee is not estopped from rescinding the agreement</u>

The last argument raised by ATWC is that the Trustee is estopped—both equitably and collaterally—from rescinding the agreement. ATWC says the Trustee is initially estopped from rescinding the agreement because the confirmation order is entitled to preclusive effect.[73] The Court does not disagree that the confirmation order is res judicata. But, as pointed out above, the confirmation order did not approve the settlement agreement. Nor are the actual terms of the

---

[72] 11 U.S.C. § 349(b).

[73] Adv. Doc. No. 111 at 4-5.

settlement agreement incorporated into the order. Because the confirmation order only mentions the settlement agreement in passing but does not approve it, the Trustee is not equitably or collaterally estopped from seeking to rescind the agreement.

ATWC also argues that the Trustee is estopped from seeking to rescind the agreement because the Debtor did not challenge the enforceability of the settlement agreement in the previous case after he defaulted.[74] It is true, it appears, that the Debtor did not raise this issue in the previous case. But ATWC does not cite any authority for the proposition that the Debtor's failure to raise this issue bars the Trustee from now seeking to rescind the settlement agreement as a matter of law. And even if the Debtor's position is somewhat contrary to its earlier position, what is ATWC's reliance? The only argument would be that the Debtor already transferred his entire interest in the Costa Rican companies to ATWC. But that reason, alone, cannot bar the Trustee's claims. After all, bankruptcy courts routinely unwind these types of transactions. So the Court declines to rule that the Trustee is estopped from bringing this action.

<u>Where does that leave the parties?</u>

Beth Basham, a third-party defendant in this proceeding, argues that the confirmation order in this case is final.[75] She is correct. But that final order confirmed the Debtor's plan as proposed; it did not give any effect to the parties' compromise since none of the Debtor's creditors had notice of the compromise, and the Court never approved it. Because the Court never approved the compromise, the Trustee does not have to vacate the confirmation order to obtain the relief it seeks.

---

[74] *Id.*

[75] Basham has joined ATWC's request for this Court to reconsider its previous ruling (Adv. Doc. 121).

**Conclusion**

There is no issue of fact here that the parties' settlement agreement was never approved by the Court. Nor could it have been since the Debtor's creditors never received any notice of the parties' proposed compromise. For those reasons, the Court declines to reconsider its previous ruling that the parties' settlement agreement is unenforceable as a matter of law. As a consequence, the confirmation order in the previous case (without the parties' settlement agreement) stands, and the parties are bound by the terms of that order. Accordingly, it is

**ORDERED** that ATWC's motion for reconsideration is DENIED.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on _____.
August 28, 2013

_____
Michael G. Williamson
United States Bankruptcy Judge

**Paul B. Thanasides, Esq.**
**McIntyre Panzarella Thanasides**
  **Bringgold & Todd, P.L.**
*Counsel for Trustee*

**Michael C. Markham, Esq.**
**Johnson Pope Bokor Ruppel & Burns LLP**
*Counsel for Plaintiffs and for*
*Third Party Defendant Beth Basham*

**Jason H. Baruch, Esq.**
**Trenam Kemker**
*Counsel for Defendants*
*Jeffery David Vogt, Jeanette Melanie Vogt,*
  *And Ched Edward Vogt*

**Jeffrey W. Warren, Esq.**
**Bush Ross, P.A.**
*Counsel for Third Party Defendant*
*Golson Legal, P.A.*

Service Instructions:  Attorney Paul Thanasides is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.